IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 38190

| STATE OF IDAHO, | ) | |
| | ) | Coeur d'Alene, April 2013 Term |
| Plaintiff-Respondent, | ) | |
| | ) | 2013 Opinion No. 78 |
| v. | ) | |
| | ) | Filed: June 25, 2013 |
| PRESTON ADAM JOY, | ) | |
| | ) | Stephen Kenyon, Clerk |
| Defendant-Appellant. | ) | |

Appeal from the District Court of the First Judicial District of the State of Idaho, Kootenai County. Hon. John T. Mitchell, District Judge.

The judgment of conviction is <u>vacated</u> and the case is <u>remanded</u> for a new trial.

Sara B. Thomas, State Appellate Public Defender, Boise, for appellant. Eric R. Lehtinen argued.

Hon. Lawrence G. Wasden, Attorney General, Boise, for respondent. Kenneth Jorgensen argued.

_____

HORTON, Justice.

Preston Adam Joy was charged with felony domestic battery, sexual penetration by a foreign object, and second-degree kidnapping in connection with an altercation with his wife, Jennifer Joy. A jury convicted Preston of domestic battery, acquitted on the sexual penetration charge, and was unable to reach a verdict on the kidnapping charge. He then entered a conditional guilty plea reserving his right to appeal all of the district court's pre-trial, trial, and post-trial rulings. Preston timely appeals, arguing that evidence of prior misconduct was erroneously admitted, that the district court made other errors in admitting evidence, and that the district court erred by refusing to instruct the jury on lesser included offenses. We vacate the judgment of conviction and remand for a new trial.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On the night of July 28-29, 2009, sheriff's deputies in Kootenai County, Idaho responded to a domestic disturbance call at the home of Preston A. Joy and his wife, Jennifer Joy.

According to Jennifer, Preston became physically abusive during an argument earlier that evening concerning the location of his keys and cell phone. The police conducted an investigation and, after questioning both Preston and Jennifer, Preston was arrested. He was eventually charged with three felonies: second degree kidnapping, domestic battery, and penetration by a foreign object.

Before the trial, pursuant to Rule 404(b), I.R.E., the State sought to admit evidence of prior instances in which Preston allegedly abused Jennifer. This evidence consisted of Jennifer's testimony regarding four previous altercations. Those four episodes, according to her trial testimony, are: at the end of March or beginning of April, 2009, she awoke to find Preston engaging in anal intercourse with her without her permission and against her will; on April 10, 2009, Preston restrained her hands, and slapped her with the front and back of his open hand forty or fifty times; on July 3, 2009 he threw her down an embankment, causing serious injuries; and on or around July 19, 2009, Preston again restrained her arms and slapped her with the front and back of his open hand fifteen to twenty times. After hearing arguments from both sides, the district court granted the State's motion and admitted the prior misconduct evidence pursuant to Rule 404(b).

Also prior to trial, the district court considered the State's motion to quash Preston's subpoena *duces tecum*, by which he sought to examine the Joys' personal computer. Preston asserted the computer contained exculpatory photographic evidence showing that he and Jennifer had engaged in consensual sex involving bondage, which he claimed was relevant to explain the source of some of Jennifer's injuries, and that Jennifer had previously consented to being anally penetrated with a dildo, which he claimed was relevant to impeach Jennifer's testimony. The district court granted the State's motion to quash, expressly noting that the ruling was based solely upon Preston's failure to comply with Idaho Rule of Evidence 412. Preston filed a motion for reconsideration. The court heard arguments and determined that Preston had complied with Rule 412 but denied the motion on the grounds the evidence was not relevant. The court later recognized the evidence could become relevant and ordered the computer turned over to the State's custody to protect the contents if events at trial showed the evidence had become relevant. The evidence was never admitted.

At trial, Jennifer testified that on the night of July 28-29, 2009, Preston pushed her into a bathtub full of water, slapped and punched her, pulled her hair, held her head under the water and

2

gagged her with a kitchen towel. At some point, according to her testimony, Preston drained the tub and removed her clothing, then tied both of her wrists to one of her ankles with a shoelace and penetrated her anus with a dildo. She further testified that he then removed her from the tub and dragged her, naked, to his vehicle and drove her to a remote area of their property where he continued to abuse her and threatened to leave her tied to a tree if she did not tell him the location of his keys and phone. She alleged that after she falsely told him she could show him where those items were located, he untied her and took her home, where she waited until he went to sleep and then called the police.

Preston disputed her account of the events of that night, testifying that Jennifer was intoxicated and that she was the initial aggressor who initiated the physical violence. According to Preston, he had to defend himself by using his arms to block her attacks and, after she struck him in the face with her knee, he defended himself by kicking at her to permit him to escape. He further testified that he left the house, that Jennifer followed him and tripped, which caused her to fall off the deck. Then, according to Preston, she charged at him and missed, which caused her to fall over a fence and down an embankment. He also testified that Jennifer came back up the embankment, still angry, and he left in his vehicle. When he returned, he started packing a bag and got back into his vehicle, intending to leave. According to Preston, Jennifer then voluntarily got into his vehicle with him and, after he moved the truck away from the house, she convinced him not to leave. Preston also testified about the four allegations of prior abuse, asserting that he did not have anal intercourse with Jennifer against her will and that in each of the alleged instances of domestic violence, Jennifer had been drinking alcohol and was the aggressor. Preston also offered the testimony of his son, Jonathan Joy, who testified that in the July 19, 2009 allegation, Jennifer had been drinking and was the initial aggressor.

The defense also offered several instances of inconsistent statements Jennifer made regarding the events of July 28-29, 2009, including: whether she removed her own clothes or Preston stripped her before pushing her in the tub; whether Preston used the dildo to penetrate her vaginally or anally; and whether she willingly got into Preston's vehicle after she got out of the bathtub or was forced into the vehicle. As rehabilitation evidence, the State offered evidence of Jennifer's prior consistent statements. The emergency room doctor who treated Jennifer testified that she told him she had been tied up and forced into the bathtub. Detective March testified that Jennifer told him she was clothed when she was pushed into the bathtub, that

3

Preston tied her with a shoelace and anally penetrated her with a dildo, and that he forced her, still bound, into his vehicle. The State also offered portions of Jennifer's preliminary hearing testimony, in which she stated that Preston stripped her clothing off before he pushed her into the bathtub, tied her with a shoelace, and anally violated her.

The jury found Preston guilty of domestic battery and not guilty of sexual penetration by a foreign object, but it did not reach a verdict on the kidnapping charge. The State requested a new trial on the kidnapping charge, and the district court set a date. Prior to that trial, Preston entered a plea agreement with the State in which he agreed to enter a conditional guilty plea, pursuant to *North Carolina v. Alford,* 400 U.S. 25 (1970). The State stipulated to concurrent sentences for kidnapping and domestic battery, with ten years fixed and a total of no more than fifteen years. In the agreement, Preston expressly reserved the right to appeal all of the district court's "pre-trial, trial and post-trial decisions and rulings," the verdict, and any "procedure or ruling leading up to that verdict or to the sentence . . . ." The district court accepted the agreement and agreed to be bound by it. The court held a hearing and entered judgment, imposing a unified sentence of fifteen years for kidnapping, with ten years fixed, and a concurrent unified sentence of ten years fixed for domestic battery. Preston timely appealed, arguing the district court: (1) improperly allowed the State to offer evidence of prior misconduct under Rule 404(b); (2) erred granting the State's motion to quash his subpoena for exculpatory evidence; (3) abused its discretion in several evidentiary rulings during the trial; and (4) erred in declining to give Preston's requested instructions on lesser included offenses. Alternatively, Preston argues that even if the individual errors were harmless, he is entitled to a new trial under the cumulative error doctrine.

## II. STANDARD OF REVIEW

A trial court has "broad discretion" in determining whether to admit or exclude evidence, "and *its judgment in the fact finding role* will only be disturbed on appeal when there has been a clear abuse of discretion." *State v. Watkins*, 148 Idaho 418, 421, 224 P.3d 485, 488 (2009) (quoting *State v. Gleason,* 123 Idaho 62, 65, 844 P.2d 691, 694 (1992)) (emphasis original). However, whether evidence is relevant is a question of law this Court reviews *de novo. State v. Shackelford*, 150 Idaho 355, 363, 247 P.3d 582, 590 (2010). "A three point inquiry is used to determine whether a trial court has abused its discretion: (1) whether the court correctly perceived the issue as one of discretion; (2) whether the court acted within the outer boundaries

of its discretion and consistently with the legal standards applicable to the specific choices available to it; and (3) whether the trial court reached its decision by an exercise of reason." *State v. Pepcorn*, 152 Idaho 678, 686, 273 P.3d 1271, 1279 (2012) (citing *State v. Perry,* 150 Idaho 209, 218, 245 P.3d 961, 970 (2010)). Additionally, even if there is "an incorrect ruling regarding evidence, this Court will grant relief on appeal only if the error affects a substantial right of one of the parties." *Shackelford*, 150 Idaho at 363, 247 P.3d at 590 (quoting *Obendorf v. Terra Hug Spray Co.,* 145 Idaho 892, 897, 188 P.3d 834, 839 (2008)); *see also* I.R.E. 103(a); I.C.R. 52 ("Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded.").

"The issue of whether a particular jury instruction is necessary and whether the jury has been properly instructed is a matter of law over which this Court exercises free review." *State v. Adamcik*, 152 Idaho 445, 472, 272 P.3d 417, 444 (2012) (quoting *State v. Zichko*, 129 Idaho 259, 264, 923 P.2d 966, 971 (1996)). However, "[a]n erroneous instruction will not constitute reversible error unless the instructions as a whole misled the jury or prejudiced a party." *State v. Draper*, 151 Idaho 576, 588, 261 P.3d 853, 865 (2011) (citing *Shackelford,* 150 Idaho at 373–74, 247 P.3d at 600–01). Whether an offense is an "included offense of the crime charged involves a question of law over which this Court exercises free review." *State v. Flegel*, 151 Idaho 525, 527, 261 P.3d 519, 521 (2011) (quoting *State v. Rosencrantz,* 130 Idaho 666, 668, 946 P.2d 628, 630 (1997)).

## III. ANALYSIS

### A. The district court erred in refusing to give Preston's requested instructions on lesser included offenses.

Preston argues the district court erred in refusing to give instructions on the lesser included offenses of misdemeanor domestic battery and false imprisonment because a view of the evidence exists that would support a finding that he committed the lesser offenses but not the greater. The State contends that the evidence did not support giving either lesser included instruction or, alternatively, that any error in failing to give the requested instructions was harmless. As explained below, we vacate the district court's judgment of conviction for felony domestic battery. However, while not necessary to the resolution of this case, we also take this opportunity to adopt the acquittal first rule set forth by the Court of Appeals.

The "acquittal first" rule is based upon Idaho Code § 19-2132. *See State v. Raudebaugh*, 124 Idaho 758, 762, 864 P.2d 596, 600 (1993). The relevant part of that statute provides:

> If a lesser included offense is submitted to the jury for consideration, the court *shall* instruct the jury that it may not consider the lesser included offense unless it has first considered each of the greater offenses within which it is included, and has concluded in its deliberations that the defendant is not guilty of each of such greater offenses.

I.C. § 19-2132(c) (emphasis added). We have not previously addressed how harmless error analysis interacts with this provision in cases where the defendant challenges a district court's refusal to give an instruction on lesser included offenses.[1] However, the Court of Appeals has considered this subsection and held that a district court's failure to instruct the jury on lesser included offenses is harmless error in cases where the jury has convicted the defendant of the greater offense. *See, e.g.*, *State v. Ransom*, 137 Idaho 560, 566, 50 P.3d 1055, 1061 (Ct. App. 2002) *abrogated on other grounds by State v. Porter*, 142 Idaho 371, 128 P.3d 908 (2005); *State v. Curtis*, 130 Idaho 525, 944 P.2d 122 (Ct. App. 1996) *aff'd, on other grounds* 130 Idaho 522, 944 P.2d 119 (1997); *State v. Hudson*, 129 Idaho 478, 927 P.2d 451 (Ct. App. 1996).

The Court of Appeals in these cases reasoned that even if the jury is instructed on a lesser included offense, it also would have to be instructed to decide whether the defendant is guilty of the greater charge first, and only to consider the lesser included offense if the jury unanimously finds the defendant is not guilty of the greater charge. *E.g., Hudson*, 129 Idaho at 480-81, 927 P.2d at 453-54. Idaho appellate courts also presume that a jury follows the instructions it is given. *Id.* at 481, 927 P.2d at 454 (citations omitted). Thus, it must be presumed that a jury would follow the acquittal first instruction. In cases where the defendant challenges the failure to give the included offense instruction after a guilty verdict, this leads to the conclusion that the jury would never consider the included offense instruction because "there is no reason to believe under these circumstances, that the jury would have come to any different conclusion concerning the [greater] charge." *Curtis*, 130 Idaho at 528, 944 P.2d at 125. Under this analysis, any error by the district court in failing to give the lesser included offense instructions Preston requested was harmless error. We agree with the legal reasoning articulated by the Court of Appeals and hereby adopt it for analyzing harmless error in challenges to the district court's failure to give an

---

[1] In *Raudebaugh*, we determined that the acquittal first rule does not violate a defendant's due process rights. 124 Idaho at 762-63, 864 P.2d at 600-01. However, in that case the district court gave an instruction on lesser included offenses that included the requirement that the jury must unanimously acquit the defendant of the greater offense before proceeding to consider the lesser offenses. Here, Preston is challenging the district court's refusal to give the instruction.

instruction on lesser included offenses where the defendant requests the instruction and demonstrates he is entitled to it.

We also note that this Court has articulated "two theories under which a particular offense may be determined to be a lesser included offense of a charged offense." *State v. Flegel*, 151 Idaho 525, 527, 261 P.3d 519, 521 (2011) (quoting *State v. Curtis,* 130 Idaho 522, 524, 944 P.2d 119, 121 (1997). In *Flegel*, this Court set forth the first theory, called the statutory theory, as follows:

> Under this theory, one offense is not considered a lesser included of another unless it is necessarily so under the statutory definition of the crime. We apply the *Blockburger* test, . . . [*Blockburger v. United States,* 284 U.S. 299 (1932)], to determine whether an offense is a lesser included offense under the statutory theory. An offense will be deemed to be a lesser included offense of another, greater offense, if all the elements required to sustain a conviction of the lesser included offense are included within the elements needed to sustain a conviction of the greater offense.

151 Idaho at 527, 261 P.3d at 521 (citations and internal quotation marks omitted). The *Flegel* Court also set forth the second theory, known as the pleading theory. "This theory holds that an offense is an included offense if it is alleged in the information [or indictment] as a means or element of the commission of the higher offense." *Id.* at 529, 261 P.3d at 523 (citations and internal quotation marks omitted).

Here, misdemeanor domestic battery is a lesser included offense of felony domestic violence and false imprisonment is a lesser included offense of second degree kidnapping. The elements of felony domestic battery are: (1) commission of a battery, (2) by one household member, (3) against another, (4) which results in a traumatic injury. *See* I.C. § 18-918(2)(a). The elements constituting misdemeanor domestic battery are the same, except that it is not necessary that the battery result in traumatic injury. *See* I.C. § 18-918(3)(b).[2] Thus, under the statutory theory, the misdemeanor domestic battery charge is a lesser included offense of the felony domestic battery charge because each element required to obtain a conviction on the misdemeanor offense is included within the elements needed to obtain a conviction on the felony offense. Similarly, the elements of kidnapping, as charged in the information against Preston, are

_____

[2] Idaho Code § 18-918(2)(a) provides: "Any household member who in committing a battery, as defined in section 18-903, Idaho Code, inflicts a traumatic injury upon any other household member is guilty of a felony." Idaho Code § 18-918(3)(b) provides "A household member who commits a battery, as defined in section 18-903, Idaho Code, against another household member which does not result in traumatic injury is guilty of a misdemeanor domestic battery."

7

(1) willfully, (2) without lawful authority, (3) seizure and/or confinement, with (4) intent to keep or detain another, (5) against her will. False imprisonment requires only an (1) unlawful (2) violation of another's personal liberty. I.C. § 18-2901. Further, regardless of textual analysis of the two statutes, we have held that false imprisonment is a lesser included offense of second degree kidnapping. *See State v. Wilcott*, 103 Idaho 766, 767, 653 P.2d 1178, 1179 (1982). Therefore, under the statutory theory, false imprisonment is a lesser included offense of second degree kidnapping.[3]

**B. The district court erred in admitting evidence of Preston's prior conduct.**

Preston argues that the district court erred in its decision to admit evidence concerning four prior incidents in which Preston allegedly abused Jennifer. He contends that the evidence is inadmissible character evidence that is not relevant for any purpose permitted under Idaho Rule of Evidence 404(b). Alternatively, Preston argues that even if the evidence is relevant, the district court erred in determining that the probative value of the challenged evidence is not substantially outweighed by the prejudicial effect of the evidence. The State responds that the evidence is relevant under Rule 404(b) to show a common scheme or plan and an absence of mistake or accident. The State also contends that even if admission of the evidence was error, it was harmless.

Generally, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." I.R.E. 404(b). This evidence of prior misconduct "may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . ." *Id.* When reviewing a trial court's decision regarding the admissibility of evidence related to a defendant's prior conduct, this Court applies a two-part standard: "(1) whether, under I.R.E. 404(b), the evidence is relevant as a matter of law to an issue other than the defendant's character or criminal propensity; and (2) whether, under I.R.E. 403, the district court abused its discretion in finding the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice to the defendant." *State v. Johnson*, 148 Idaho 664, 667, 227 P.3d 918, 921 (2010) (citing *State v. Cross,* 132 Idaho 667, 670, 978 P.2d 227, 230 (1999)).

---

[3] We note also that the State conceded the validity of both lesser included charges in its briefing.

*1. Relevance*

Evidence of a defendant's prior misconduct is not admissible unless it is relevant to the charged offense. Under this part of the analysis, the evidence "must be sufficiently established as fact and relevant as a matter of law to a material and disputed issue other than the character or criminal propensity of the defendant." *State v. Pepcorn*, 152 Idaho 678, 688, 273 P.3d 1271, 1281 (2012) (citing *Johnson*, 148 Idaho at 667, 227 P.3d at 921; *State v. Grist,* 147 Idaho 49, 52, 205 P.3d 1185, 1188 (2009)).[4] Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." I.R.E. 401. Under Rule 404(b), evidence of uncharged misconduct "may be admissible for certain purposes, including 'preparation, plan, knowledge, [and] identity,' which purposes are most frequently grouped together under the rubric of 'common scheme or plan.'" *Grist*, 147 Idaho at 54, 205 P.3d at 1190. Thus, evidence of a defendant's prior conduct may be admissible where it demonstrates the existence of a common scheme or plan.

In *Grist*, this Court noted that the "common scheme or plan" contemplated by Rule 404(b) is "a common scheme or plan embracing the commission of two or more crimes *so related to each other* that proof of one tends to establish the other . . . ." 147 Idaho at 54-55, 205 P.3d at 1190-91 (citing *State v. Pizzuto,* 119 Idaho 742, 810 P.2d 680 (1991)). In a subsequent case, the Court explained that "at a minimum," this rule requires, "evidence of a common scheme or plan beyond the bare fact that" the defendant has committed the same kind of misconduct in the past. *Johnson*, 148 Idaho at 668, 227 P.3d at 922. Rather, "[t]he events must be linked by common characteristics that go beyond merely showing a criminal propensity and instead must objectively tend to establish that the same person committed all the acts." *Id.* (citations omitted). For example, in a child sex abuse case, this Court held that evidence of the defendant's prior misconduct, in the form of testimony by other alleged victims of the defendant, was relevant to demonstrate the existence of his common scheme or plan to abuse his wife's relatives. *Pepcorn*, 152 Idaho at 689, 273 P.3d at 1282. In that case, however, the Court did not

---

[4] Here, the district court determined that the prior conduct evidence was sufficiently established as fact based upon police reports consistent with Jennifer's testimony regarding the alleged prior conduct and the relative closeness in time of those incidents. Preston does not argue that the prior conduct evidence has not been sufficiently established as fact. Instead, he argues that the evidence, even if true does not demonstrate the existence of a common scheme or plan. While he does not concede that the prior conduct occurred exactly as Jennifer claims, neither does he contend that there is insufficient proof to admit the evidence. Therefore, we need not address the question of whether the prior conduct evidence at issue has been established as fact.

have to consider whether the defendant's past misconduct was sufficiently similar to the charged offense as to constitute proof of the existence of a plan because there was also direct evidence of the defendant's plan.[5] *Id.* In cases where no direct evidence exists to show the existence of a common scheme or plan, the evidence of uncharged conduct must "bear such a resemblance to the charged offense that the existence of a common plan may legitimately be inferred." *Id.*

The mere fact that the charged and uncharged conduct is similar does not by itself establish the admissibility of prior conduct evidence to show a common scheme or plan. In a case where the defendant was charged with lewd and lascivious conduct with a minor under sixteen, we held that the district court erred in admitting evidence the defendant had abused his sister when she was about the same age as the victim in the charged offense. *Johnson*, 148 Idaho at 669, 227 P.3d at 923. The charged and uncharged incidents in that case were similar in that victims were both young girls about the same age, both victims were younger members of the defendant's family for whom the defendant was an "authority figure," and in both cases, the abuse took the same form. *Id.* However, the Court found these similarities to be "far too unremarkable to demonstrate a 'common scheme or plan' in the defendant's behavior." *Id.* Considering its holding in *Grist*, the Court explained that evidence showing only "generalized similarities," between charged and uncharged conduct, such as the victim's sex or age, or the means by which a defendant gains access to them "is more accurately described as inadmissible evidence merely demonstrating the defendant's predisposition for opportunistically molesting children." *Id.* at 669 n.5, 227 P.3d at 923 n.5 (citing *Grist,* 147 Idaho at 54, 205 P.3d at 1190). Thus, to be admissible under Rule 404(b), evidence of prior misconduct must show more than a superficial similarity to the nature and details of the charged conduct, but must instead show that the defendant's charged and uncharged conduct is linked in a way that permits the inference that the prior conduct was planned as part of a course of conduct leading up to the charged offense.

Here, Jennifer testified that on the night of July 28-29, 2009, an argument between Preston and Jennifer became violent. According to her testimony, Preston shoved her into a bathtub full of cold water where he repeatedly held her head under the water for several seconds

---

[5] In *Pepcorn*, the defendant stated that "his wife's entire family wanted to be touched and that since his wife would not have sex with him, he had 'to have it' with someone." 152 Idaho at 689, 273 P.3d at 1282. Because this "direct evidence" showed "a definite plan for sexual conduct with members in his wife's family that goes beyond a showing of criminal propensity," the Court held that the testimony of the other alleged victims was relevant to show "[a] common plan of sexual misconduct with the same group of correspondingly aged children of both sexes that were related to his wife . . . ." *Id.*

at a time, punched her, and slapped her with the front and back of his hand. She testified that he gagged her with a hand towel, removed her clothes, tied both of her wrists and her left ankle together behind her back, and anally penetrated her with a sex toy. According to her testimony, Preston then dragged her to his vehicle while she was still bound, forced her into it, and drove to the back of their property where he continued to hit and slap her. She testified that he threatened to tie her to a tree and leave her there for the bears and mosquitoes to "eat alive" if she didn't give him information about his cell phone and keys. According to Jennifer, she falsely told him she knew where those objects were, and he untied her and took her home. When Preston fell asleep in their bedroom, Jennifer called the police and he was eventually charged with second degree kidnapping, felony domestic battery, and sexual penetration with a foreign object.

Pursuant to Idaho Rule of Evidence 404(b), the State offered evidence of one prior instance of sexual abuse and three instances of previous domestic violence. First, Jennifer alleges that one evening in 2009, at the end of March or beginning of April, she awoke around midnight to find Preston engaging in anal intercourse with her and that he refused to stop when she asked him to. With respect to the domestic violence charge, Jennifer alleges that on April 10, 2009, Preston straddled her on their couch, restrained her hands, and slapped her with the front and back of his open hand forty or fifty times. Next, she testified that on the evening of July 3, 2009, while she was arguing with Preston outside their home, he picked her up and threw her down an embankment, causing injuries that later required a visit to the emergency room. Finally, she testified that one evening around July 19, 2009, Preston straddled her on their bed, restrained her arms, and slapped her with the front and back of his open hand fifteen to twenty times.

We hold that this evidence is not relevant to show a common scheme or plan because it merely shows the manner in which Preston has allegedly abused Jennifer in the past, and does not demonstrate a planned course of connected behavior. The district court determined that the prior conduct evidence was relevant to demonstrate a common scheme or plan of abuse. In reaching its decision, the court specifically noted (1) that the nature of the prior conduct was similar to the charged offense because it involved the same victim, slapping and restraint, and sexual penetration against the victim's will; and (2) that each incident of prior abuse happened within a short time of each other and of the charged conduct. However, the similarities between Preston's prior misconduct and the charged conduct are essentially the same as the general

11

similarities in *Johnson*—the victims' sex and age and the means by which a defendant gained access to the victim—that we determined were not relevant to show a common scheme or plan.

For example, the primary similarity between the alleged prior domestic abuse and the charged conduct is the method of abuse Preston is alleged to have used. In each instance, Jennifer testified that Preston restrained her and then hit her in the face with his open hand, alternating between the front and back of his hand. While the events are similar and occurred close together in time, they do not constitute "a common scheme or plan embracing the commission of two or more crimes *so related to each other* that proof of one tends to establish the other," as required under *Grist*. Rather, they are merely suggestive of Preston's predisposition for domestic violence, precisely the kind of character evidence barred by Rule 404.

Similarly, the evidence of prior sexual abuse is not relevant. There is no evidence that the two events were part of a plan to sexually abuse Jennifer. While the conduct was similar, the only way the prior misconduct makes the charged conduct more likely to have occurred is by propensity. In other words, proof of the alleged anal rape would tend to establish the later forcible penetration only via the impermissible inference that "if he did it once, he probably did it again." Further, given that the prior conduct occurred in a very different setting from the charged conduct, which involved an ongoing physical confrontation between Preston and Jennifer, and that the charged conduct involved a foreign object, the two incidents are too attenuated to be relevant to motive or absence of mistake. Therefore, Jennifer's testimony concerning the prior sexual misconduct is not relevant to a permitted purpose under Rule 404(b).

### 2. Harmless error

Because we have determined that the challenged testimony in this case is not relevant to a permitted purpose under Rule 404(b), it is not necessary to consider the second prong of the test and determine whether the probative value of the evidence is substantially outweighed by the risk of unfair prejudice. Instead, the next step is to determine whether the error was harmless. *See Johnson*, 148 Idaho at 669, 227 P.3d at 923; I.C.R. 52. This Court applies the harmless error test articulated by the Supreme Court of the United States in *Chapman v. California,* 386 U.S. 18 (1967). *State v. Perry*, 150 Idaho 209, 222, 245 P.3d 961, 974 (2010). Under the two-part *Chapman* test, the defendant must establish the existence of an error, "at which point the State shall have the burden of demonstrating that the error is harmless beyond a reasonable doubt." *Id.*

To meet that burden, the State must "prove[] 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" *Id.* at 221, 245 P.3d at 973 (quoting *Chapman,* 386 U.S. at 24). Interpreting *Chapman*, the Supreme Court of the United States has explained that:

> To say that an error did not "contribute" to the ensuing verdict is not, of course, to say that the jury was totally unaware of that feature of the trial later held to have been erroneous. . . . To say that an error did not contribute to the verdict is, rather, to find that error unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record.

*Yates v. Evatt*, 500 U.S. 391, 403 (1991), *overruled in part on other grounds by Estelle v. McGuire,* 502 U.S. 62, 72 n. 4 (1991). Thus, an appellate court's inquiry "is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in *this* trial was surely unattributable to the error." *Sullivan v. Louisiana*, 508 U.S. 275, 279 (1993).

In this case, the error in admitting the evidence of prior misconduct is not harmless because the jury's verdict on the felony domestic battery charge cannot be said to be "surely unattributable to the error." While there is other evidence on which the jury could have based its verdict, there are no witnesses other than the Joys, and the case is thus primarily based upon whose version of events the jury believes. The State, in fact, acknowledged that Jennifer's credibility would be an issue and admitted "the enormity of" the impeachment evidence against Jennifer. Further, both the State and the district court recognized the case as close and the State's evidence as "relatively weak." We hold that the State has not shown beyond a reasonable doubt that the verdict was "surely unattributable" to the admission of irrelevant evidence. Therefore, because the error affected Preston's substantial right to a fair trial, we vacate the judgment of conviction and remand the matter to the district court for a new trial.

When we vacate a conviction and order a new trial, we are also required to "pass upon and determine all the questions of law involved in the case presented upon such appeal, and necessary to the final determination of the case." I.C. § 1-205; *see also State v. Payne*, 146 Idaho 548, 568, 199 P.3d 123, 143 (2008). Therefore, to provide guidance on remand, we will address other issues Preston presented on appeal that are likely to be presented again in future proceedings.

**C. The district court abused its discretion in quashing Preston's subpoena *duces tecum*.**

Preston argues the district court erred in granting the State's motion to quash his subpoena *duces tecum* because it considered the motion under the wrong standard. He contends that Idaho Criminal Rule 17(b) governs subpoenas and the court abused its discretion by deciding the motion based on its determination the evidence was not relevant rather than applying Rule 17(b). The State responds that the issue is moot because Preston was acquitted of the forcible penetration charge and that was the only matter to which the subpoenaed evidence was relevant. Alternatively, the State contends that the court's decision was proper under Rule 17(b) and further, that any error was harmless.

Under the Idaho Criminal Rules, "[a] subpoena may also command the person to whom it is directed to produce the books, papers, documents or other objects designated therein." I.C.R. 17(b). The Rule also provides that "[t]he court on motion may quash or modify the subpoena if compliance would be unreasonable or oppressive." *Id.* While we have not articulated a specific standard for reviewing a district court's decision to grant or deny a motion to quash a subpoena, the language of the Rule suggests the decision is discretionary. *See, e.g.*, *State v. Harbaugh*, 123 Idaho 835, 837, 853 P.2d 580, 582 (1993) (use of "may" in Idaho Criminal Rule 33 denotes court's discretion in applying rule); *State v. Jacobson*, 150 Idaho 131, 138, 244 P.3d 630, 637 (Ct. App. 2010) (use of "may dismiss" rather than "shall dismiss" in Idaho Criminal Rule 48(a) indicates decision to deny motion to dismiss is reviewed for abuse of discretion). Thus, we review a trial court's decision to grant or deny a motion to quash a subpoena for an abuse of discretion.

Here, Preston obtained a subpoena *duces tecum* to obtain sexually explicit images from Jennifer's computer that he believed would impeach her by demonstrating that she had made false statements to the police about the nature of her sexual relationship with Preston and would rebut the State's evidence regarding the cause of the ligature marks found on Jennifer's wrists and ankles.[6] The State moved to quash the subpoena, initially arguing that the subpoena should be quashed under Rule 17(b) because the evidence Preston sought was irrelevant and therefore the request was unreasonable and oppressive. The district court asked for argument from the parties and stated that it could not "decide" the motion without additional information.

---

[6] This portion of the transcript is related to whether Jennifer ever consented to anal intercourse. The other evidence Preston sought was related to whether the Joys engaged in consensual bondage, which would help explain the ligature marks on her wrists and ankle.

14

Eventually, the district court granted the motion to quash based solely upon Preston's failure to comply with Idaho Rule of Evidence 412[7] and stated expressly that it was not applying Rule 17. Thus, because the district court failed to act "consistently with the legal standards applicable to the specific choices available," it abused its discretion in denying the motion to quash. Preston moved for reconsideration of the district court's grant of the motion to quash. At the hearing on this motion, the district court again focused on Rule 412 and the relevancy of the evidence. After determining that Preston had complied with Rule 412, the court expressly denied Preston's motion to admit the evidence from the computer and, implicitly, the motion to reconsider. The district court again failed to consider the standard set forth in Rule 17(b).

While Preston was acquitted of the forcible penetration charge, the computer potentially contained significant evidence regarding Jennifer's credibility. Evidence that goes to the credibility of a complaining witness is normally admitted under a broad standard. *See, e.g.*, *State v. White*, 97 Idaho 708, 713, 551 P.2d 1344, 1349 (1976) (citations omitted) ("This court has consistently held that where a defendant is seeking on cross-examination to show bias or test the credibility of the complaining witness, the trial court should allow considerable latitude.")[8] Further, Preston is entitled to conduct his own review and investigation of the evidence. If he discovers evidence that he wishes to offer at trial, the district court will have the opportunity to consider its relevance at that time. However, a trial court does not have discretion to restrict a defendant's access to potentially admissible evidence because some of it might be irrelevant.

**D. The district court's evidentiary rulings during the trial.**

Preston also asserts the district court made several errors in its decisions to admit or exclude evidence during the trial. We address these errors separately below.

---

[7] The relevant portion of Rule 412 provides that "in a criminal case in which a person is accused of a sex crime, evidence of a victim's past sexual behavior other than reputation or opinion evidence is also not admissible," unless it is "admitted in accordance with subdivision (c) and is evidence of . . . past sexual behavior with the accused and is offered by the accused upon the issue of whether the alleged victim consented to the sexual behavior with respect to which the sex crime is alleged . . . ." I.R.E. 412(b)(2)(B). Subdivision (c) sets forth the requirements the party offering the evidence must meet prior to the evidence being admitted, which include a "written motion" and "written offer of proof" submitted to the court prior to trial. *See* I.R.E. 412(c)(1)-(3). The court determined that because the evidence requested in the subpoena was about Jennifer's past sexual history, Preston had to comply with Rule 412.

[8] Additionally, this Court has held that the State is required by due process to disclose to the defendant all material exculpatory evidence known to it or in its possession, including impeachment evidence. See *Dunlap v. State*, 141 Idaho 50, 64, 106 P.3d 376, 390 (2004) (citations omitted); I.C.R. 16(a), (b).

***1. Out-of-court statements - Admission of Jennifer's preliminary hearing testimony***

Preston argues the district court erred in admitting Jennifer's preliminary hearing testimony as prior consistent testimony pursuant to Idaho Rule of Evidence 801(d)(1)(B) because Jennifer's motive to lie arose prior to the preliminary hearing. The State contends the evidence was offered under Rule 801(d)(1)(B) and under Rule 106 to provide context to the portions of Jennifer's preliminary hearing testimony that the defense introduced on cross-examination. Preston argues that the testimony was not permissible under Rule 106 because the challenged preliminary hearing testimony was unrelated to the answers she gave at trial during cross-examination.

The Idaho Rules of Evidence define hearsay as an out-of-court statement "offered in evidence to prove the truth of the matter asserted." I.R.E. 801(c). Hearsay is not admissible unless specifically provided for in the Rules of Evidence. I.R.E. 802. However, an out-of-court statement consistent with the declarant's trial testimony, "offered to rebut an express or implied charge against declarant of recent fabrication or improper influence or motive," is not hearsay. I.R.E. 801(d)(1)(B). This Court has implicitly held that the prior consistent statements admissible under Rule 801(d)(1)(B) are those "which preceded any motive on the part of [the declarant] to lie." *State v. Trevino*, 132 Idaho 888, 895, 980 P.2d 552, 559 (1999). Today, we explicitly hold that the Rule only permits introduction of out-of-court statements that were made prior to the time when the declarant would have a motive to lie.

Idaho Rule of Evidence 106 provides that if a party introduces a writing or part of a writing, "an adverse party may require that party at that time to introduce any other part or any other writing . . . which ought in fairness to be considered contemporaneously with it." This Court has held that additional prior testimony admitted under this Rule should be limited to only those parts "which explained, qualified or were relevant to" what was offered by the other party. *State v. Bingham*, 124 Idaho 698, 700, 864 P.2d 144, 146 (1993) (quoting *State v. Fain,* 116 Idaho 82, 86, 774 P.2d 252, 256 (1989)). In that case, the Court held after a party introduced a portion of a video that appeared to demonstrate inconsistent statements of a witness, additional parts of the video would be admissible to provide context to show that the prior statements were not actually inconsistent, but that the adverse party requesting admission of the additional material must "tailor" its request to include only the relevant additional portion. *Id.* Therefore,

only additional material that is relevant to what has already been admitted may come in under Rule 106.

Here, Jennifer would have had a motive for fabrication regarding the events on the night in question prior to her testimony at the preliminary hearing. The record shows that Jennifer and Preston were divorcing and that Jennifer filed for divorce before the preliminary hearing. Both parties sought a significant portion of the marital property, and the divorce thus provided Jennifer with a motive to lie. Consequently, the evidence was not proper under Rule 801(d)(1)(B) because the preliminary hearing testimony did not precede her motive to lie.

Further, the preliminary hearing testimony admitted on re-direct was not relevant to explain or qualify the preliminary hearing testimony admitted during cross-examination. On cross-examination, defense counsel pointed out two inconsistencies between Jennifer's testimony at the preliminary hearing and her trial testimony. First, her testimony was inconsistent regarding the April 10, 2009, incident and whether Jennifer's hands were restrained at her side or behind her back. Second, she gave conflicting testimony about the order of events and at what point Preston let water out of the tub on July 28-29, 2009. On re-direct, the State asked Jennifer to read her preliminary hearing testimony regarding how many times and for how long Preston held her head under water in the bathtub on July 28-29, 2009, how Preston gagged her with a towel on that night, how and when he tied her with a shoelace, and when he penetrated her with a sex toy. While this testimony shows some prior inconsistent testimony, the purpose of Rule 106 is to clarify evidence admitted by the other party. The portions of the preliminary hearing transcript admitted on re-direct do not serve that purpose because they are not related to the same topics. Therefore, the evidence was not admissible under Rule 106.

## 2. Out-of-court statements - Admission of Jennifer's statements to Detective March

Preston argues the district court erred in permitting the State to impeach Jennifer's testimony with prior inconsistent statements recounted by a detective who interviewed Jennifer after the night in question. He contends the testimony is inadmissible hearsay. The State contends that, because Jennifer's credibility had been attacked through the use of out-of-court statements, the detective's testimony was admissible under Rule 806 to rehabilitate her credibility.

An out-of-court statement "offered in evidence to prove the truth of the matter asserted" is inadmissible hearsay unless another Rule provides for its admission. I.R.E. 801(c); I.R.E. 802.

17

However, Rule 801(d)(1)(B) permits consistent prior statements to rebut attacks on the declarant's credibility in cases where the prior statements preceded the declarant's motive to lie. *Trevino*, 132 Idaho at 895, 980 P.2d at 559. Further, if a hearsay statement has been admitted, the declarant's credibility "may be attacked, and if attacked may be supported, by any evidence which would be admissible for those purposes if declarant had testified as a witness." I.R.E. 806.

In this case, defense counsel, while cross-examining Kootenai County Sheriff's Deputy Ellis, elicited out-of-court statements that Jennifer made to the deputy that contradicted Jennifer's trial testimony. The State then called another Kootenai County Sheriff's Deputy, Detective March, and asked him to recount statements Jennifer made to him about the night of July 28-29, 2009. Preston's counsel objected on the ground the testimony was hearsay and the State countered that the testimony was admissible as prior consistent testimony to rehabilitate Jennifer's credibility after Deputy Ellis's testimony, and the court overruled the objection without comment. As any motive to fabricate that Jennifer may have had existed at the time she contacted law enforcement about the events of the night of July 28-29, her statements to Detective March were not admissible under Rule 806.

### 3. Admission of Exhibit 46 (boot lace)

Preston argues the district court erred in admitting Exhibit 46 because the State failed to sufficiently authenticate it. In reply, the State argues it provided proper foundation and that defense counsel's concerns go to the weight of the evidence, not its admissibility.

The Idaho Rules of Evidence require "authentication or identification as a condition precedent to admissibility," which "is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." I.R.E. 901(a). One example of "authentication or identification conforming with the requirements of this rule" is "[t]estimony of a witness with knowledge that a matter is what it is claimed to be." I.R.E. 901(b)(1).

In this case, if the State contends Exhibit 46 is either the boot lace allegedly used to tie Jennifer (or the remaining twin), additional foundation is necessary for its admission. First, Jennifer's sister-in-law testified that she "came across a boot lace in Preston's nightstand drawer and turned it over to Sergeant March." However, Detective March testified that he spoke to Jennifer on August 3, 2009, and that it was Jennifer who gave him a zip-top baggie containing a brown bootlace. When Jennifer was shown Exhibit 46 during the trial, she confirmed that her sister-in-law found the lace, but was not clear as to the nature of the boot lace:

18

Q: And then what about Number 46?
A: That's the shoelace or the boot lace that I'm pretty sure it was exactly like this one. I'm pretty sure that's the one he used. My sister-in-law found it.
Q: And is that the same one you gave to Detective March?
A: Yes.
Q: Are you exactly sure it's the same one?
A: I'm not exactly sure if it's the same one, but I know that's the exact same kind he used.

From this record, there is contradictory evidence as to who delivered the boot lace to Detective March. Inasmuch as this boot lace bears no unique identifying characteristics, if the State wishes to admit the boot lace as the one used in the commission of the alleged offense (or its remaining twin) then the State must demonstrate the chain of custody in order to satisfy the requirements of I.R.E. 901(a).

### 4. Improper inquiry by the State – Cross-examination outside scope of direct examination

Preston argues that the district court permitting the State to cross-examine him about whether he was attending alcohol treatment classes was an abuse of discretion because the inquiry was outside the scope of the direct examination. The State replies that the questioning was proper because it was related to Preston's credibility.

Under the Idaho Rules of Evidence, the trial court "shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment." I.R.E. 611(a). With respect to the scope of cross-examination, the Rules provide that it "should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness." I.R.E. 611(b). However, the court has discretion to "permit inquiry into additional matters as if on direct examination." *Id.*

Here, defense counsel asked Preston about his reasons for telling Jennifer he was going to leave their marriage. In response, he testified that Jennifer had agreed to attend alcohol abuse counseling, but never did and that he felt she was not going to make "an honest attempt to quit drinking." On cross-examination, the State challenged Preston's testimony, asking whether it was true that he was actually "supposed to be" attending treatment. The district court overruled defense counsel's objection that the question was outside the scope of the direct examination, and Preston answered the question. The prosecutor also asked Preston whether he had been "in

some kind of trouble for not being in treatment," and, after another overruled objection, he answered "no." It was error to admit this testimony. The line of questioning suggests that Preston was legally required to attend alcohol abuse counseling. However, the State did not show that the underlying reason for compulsory alcohol abuse counseling was relevant. Therefore, the testimony regarding Preston's alcohol abuse treatment was inadmissible.

### 5. Improper inquiry by the State – Cross-examination requiring witness to speculate

Preston argues the district court erred in permitting the State to cross-examine Preston about another witness's testimony because the questioning called for speculation. The State replies that the questioning was proper because it only required Preston to offer an inference based upon his personal knowledge.

The Idaho Rules of Evidence provide that a lay witness may give testimony containing an opinion or inference if the testimony is "limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the testimony of the witness or the determination of a fact in issue, and (c) not based on scientific, technical or other specialized knowledge . . . ." I.R.E. 701. This Court has held that the "perception of the witness" requirement in Rule 701(a) requires opinions and inferences to be based upon "the witness's personal knowledge of events or facts . . . ." *State v. Raudebaugh*, 124 Idaho 758, 767, 864 P.2d 596, 605 (1993). This requires "the same personal knowledge of events as required by I.R.E. 602," which provides that "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." *Id.* (quoting I.R.E. 602). Thus, a lay witness may give an opinion or inference if doing so helps to explain the witness's testimony or to determine a disputed fact and the opinion or inference is based upon the witness's personal knowledge as demonstrated by evidence.

In this case, the defense called Preston's son, Jonathan Joy, as a rebuttal witness regarding one of the instances of prior misconduct admitted by the State. Counsel elicited Jonathan's testimony that on the evening of July 19, 2009, he saw Preston and Jennifer in an argument and that he saw Jennifer striking Preston with her hands but did not see Preston hit Jennifer. On cross-examination, Jonathan testified that he did not call the police after he saw Jennifer commit battery against Preston and volunteered the following information about his reason for not calling the police:

Q: Did you tell the police what happened, that crime you say you saw?

20

A: No. And my dad wouldn't either. Girls hit guys. It's – I mean, girls do that so I don't – I don't know what to tell you.
Q: Girls do that as a matter of course?
A: What's that?
Q: Girls do that regularly?
A: Girls do that because they can.
Q: What do you mean by girls do that because they can?
A: I mean that – I meant that, uh, girls can be a lot more violent and not get consequences for it. I mean that girls can hit a guy in the face several times and it not leave a bruise. I mean that – I don't know what you want me to say.

Later, while cross-examining Preston, the State asked him about his son's testimony and specifically whether Jonathan's statements about women being able to get away with hitting men because men don't show bruises were "beliefs your son has come by himself independent of you?" The district court overruled an objection that the question called for speculation and the question was restated as "How'd your son come up with beliefs like that?" Preston explained that by growing up farming, hunting, riding motorcycles and horses, Jonathan had observed that men do not bruise easily. After another overruled objection for speculation, the prosecutor asked whether Preston "ever gave [Jonathan] any cause to believe" that when a man gets hit by a woman, it does not leave a mark. After an overruled objection of "asked and answered," Preston answered in the affirmative, explaining that Jonathan had seen Preston get hit in the face without showing a bruise and admitted that he had also talked to Jonathan about the concept, though not in preparation for the trial. The trial court erred in permitting this line of questioning because it required Preston to speculate regarding Jonathan's beliefs and how he acquired them, in violation of Idaho Rule of Evidence 602.

*6. Improper inquiry by the State – Cross-examination outside witness's personal knowledge*

On cross-examination, Preston described Jennifer's appearance at one point in the night in question as "filthy and dirty," with "sticks and leaves in her hair." The prosecutor then asked Preston a number of questions as to how many sticks and pieces of brush were in her hair, despite Preston's repeated statements that he did not know. As the record does not permit this Court to determine whether this questioning crossed the line from legitimate efforts to probe the witness's memory to badgering, we decline to provide any guidance on remand other than to observe that the trial court may exercise its discretion to exclude even relevant evidence "if its probative value is substantially outweighed by . . . considerations of undue delay, waste of time, or needless presentation of cumulative evidence." I.R.E. 403.

21

## IV. CONCLUSION

Because the district court erred by admitting evidence of Preston's prior misconduct, we vacate the judgment of conviction and remand for a new trial on the remaining charges of domestic battery and kidnapping.

Chief Justice BURDICK and Justices EISMANN, J. JONES and W. JONES **CONCUR**.