# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 50130-2022

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | Moscow, April 2024 Term |
| | ) | |
| v. | ) | Opinion filed: August 2, 2024 |
| | ) | |
| DESIREE ELAINE KARST, | ) | Melanie Gagnepain, Clerk |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the First Judicial District of the State of Idaho, Kootenai County. Scott L. Wayman, District Judge.

The decision of the district court is reversed.

Erik R. Lehtinen, State Appellate Public Defender, Boise, for Appellant. Jenny C. Swinford argued.

Raúl R. Labrador, Idaho Attorney General, Boise, for Respondent. John C. McKinney argued.

_____

ZAHN, Justice.

Desiree Elaine Karst appeals the district court's denial of her motion to reimburse the $569.50 she paid in court-ordered fees following her conditional guilty plea to various charges. On appeal, Karst's conviction was invalidated by this Court and the prosecutor subsequently dismissed the criminal charges against her. The district court denied Karst's motion to reimburse the fees she paid on the basis that it lacked jurisdiction to consider it, and advised Karst that she would have to sue each governmental entity that received a portion of the fees. We hold that the district court has personal and subject matter jurisdiction to consider Karst's motion to reimburse and reverse its decision denying the motion.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Karst was a passenger in a car during a traffic stop in Kootenai County. The officer initiating the traffic stop radioed for a drug dog, which arrived and alerted. Karst admitted to having drugs in the car, and additional drugs and paraphernalia were found on Karst when she was taken

to jail. Karst was charged with possession of methamphetamine, possession of marijuana, possession of drug paraphernalia, and introducing major contraband into a correctional facility. Karst moved to suppress the drug and paraphernalia evidence, arguing that the officer impermissibly extended the traffic stop. The district court partially denied the motion, after which Karst entered conditional guilty pleas reserving her right to appeal.

As part of its judgment of conviction, the district court ordered Karst to pay $285.50 in "court costs," $200.00 in "Idaho State Police Lab Fees," and a "$2.00 handling fee . . . on each installment/partial payment." According to the "Case Transaction Summary" for Karst's case, she ultimately paid $569.50 in fees:

- $220.00 to the Idaho State Police for toxicology testing
- $10.00 in administrative surcharges
- $17.50 in court costs and fees
- $10.00 in court technology fees
- $75.00 for crime victims compensation
- $30.00 in domestic violence court fees
- $10.00 in drug violations hotline fees
- $100.00 in emergency surcharge fees
- $3.00 in peace officer and detention officer disability fees
- $15.00 in peace officer standards and training fees
- $15.00 in victim notification fund fees
- $60.00 in community service fees
- $4.00 in transactional fees

Karst contends that the fees were mandated by various state laws. The State does not dispute this contention. Karst paid the fees to the clerk of the district court, who is required by statute to remit the monies to the county auditor. I.C. § 31-3201I. The county auditor is then required by statute to distribute the funds to various governmental entities. *Id*. The distribution of the monies appears to have been done according to the dictates of state law. *See id*.

Karst appealed the district court's partial denial of her motion to suppress. This Court concluded that the officer impermissibly extended the traffic stop, reversed the district court's denial of Karst's motion to suppress, and remanded the case for further proceedings. *State v. Karst*, 170 Idaho 219, 228, 509 P.3d 1148, 1157 (2022).

2

On remand, the prosecutor moved to dismiss all charges against Karst and the district court entered an order dismissing the case. One day later, Karst filed a "motion to reimburse," seeking reimbursement of the $569.50 she had paid in court-ordered fines because her conviction had been invalidated and the charges against her had been dismissed. Attached to the motion was Karst's "Case Transactions Summary," which showed a breakdown of the fees that Karst had paid in the case. Karst argued that the State's retention of her funds after her conviction had been overturned violated her due process rights under the United States Constitution. In opposition, the State argued that the Idaho Court of Appeals' decision in *State v. Peterson*, 153 Idaho 157, 280 P.3d 184 (Ct. App. 2012), held that the district court does not have jurisdiction to return funds to a defendant whose conviction had been vacated. The State argued that Karst's remedy was to file a civil action against each governmental entity that received her money. In her brief in support of her motion to reimburse, Karst acknowledged *Peterson*, but argued that the United States Supreme Court implicitly overruled *Peterson* in *Nelson v. Colorado*, 137 S. Ct. 1249, 1258 (2017).

The district court held a hearing on the motion, at which Karst argued that because her conviction had been overturned, the State had no lawful basis to retain her funds and continuing to do so was a violation of her due process rights. Karst contended that the district court had jurisdiction to order the payment of fees, so the district court should also have jurisdiction to order that her monies be returned. The district court, ruling orally from the bench, denied the motion. The district court concluded that the U.S. Supreme Court's decision in *Nelson* did not overrule *Peterson*, that it was bound by *Peterson*, and therefore it lacked jurisdiction to consider Karst's motion. The district court also concluded that there was no due process violation because Karst could file civil suits against each agency that had received a portion of her funds.

Karst timely appealed the denial of her motion for reimbursement.

## II.    STANDARD OF REVIEW

"Jurisdiction, whether over the person or the subject matter, is an issue of law subject to free review." *Hooper v. State*, 150 Idaho 497, 499, 248 P.3d 748, 750 (2011).

## III.    ANALYSIS

### A. The district court has jurisdiction to consider Karst's motion to reimburse.

The district court must have both subject matter jurisdiction and personal jurisdiction in a criminal case to consider a motion. "Without personal jurisdiction, the court has no person to hold accountable, and without subject matter jurisdiction, the court has no alleged crime affecting the

State of Idaho to hold the person responsible for." *State v. Rogers*, 140 Idaho 223, 228, 91 P.3d 1127, 1132 (2004). In this case, the district court did not specify whether it denied Karst's motion due to lack of personal jurisdiction, lack of subject matter jurisdiction, or both. We will therefore analyze both types.

1.  *The district court has subject matter jurisdiction to consider Karst's motion.*

Karst asserts that the district court had subject matter jurisdiction to grant her motion to reimburse because it was timely filed. Karst contends that the *Peterson* decision is only instructive as to an untimely motion to reimburse. The State counters that the district court did not hold that it lacked subject matter jurisdiction because the motion was untimely, but that it lacked subject matter jurisdiction because the motion was civil in nature. Because Karst did not challenge that basis for the decision, the State argues that the district court should be affirmed.

Preliminarily, we reject the State's argument that Karst failed to challenge the district court's ruling that her motion was civil in nature. The record reveals that the district court did not deny Karst's motion because it was civil in nature, but instead because it lacked jurisdiction to consider Karst's motion. That decision was based on *Peterson*, which held that the district court lacked jurisdiction to consider an untimely motion to reimburse and that the defendant's remedy was to file a civil action to recover the amounts paid. *See Peterson*, 153 Idaho 157, 280 P.3d 184. Karst is arguing to distinguish or overrule *Peterson*. Therefore, Karst properly challenged the district court's basis for denying her motion and we now turn to the merits of her argument.

"Jurisdiction over the subject-matter is the abstract power to hear a case of a particular kind and character." *State v. Jakoski*, 139 Idaho 352, 355, 79 P.3d 711, 714 (2003). "Subject matter jurisdiction in a criminal case is conferred by the filing of an information, indictment, or complaint alleging an offense was committed in the [s]tate of Idaho." *State v. Gorringe*, 168 Idaho 175, 182, 481 P.3d 723, 730 (2021) (quotation marks and internal citations omitted). "Absent a statute or rule extending its jurisdiction, *the trial court's jurisdiction to amend or set aside a judgment expires once the judgment becomes final, either by expiration of the time for appeal or affirmance of the judgment on appeal*." *Jakoski*, 139 Idaho at 355, 79 P.3d at 714 (emphasis added) (footnote omitted).

The district court had subject matter jurisdiction to consider Karst's motion to reimburse. Subject matter jurisdiction was conferred on the district court when the State filed a complaint alleging Karst committed various crimes. *See Gorringe*, 168 Idaho at 182, 481 P.3d at 730. The

4

district court retains jurisdiction until it is extinguished by the expiration of the time to appeal or affirmance of the judgment on appeal. *Jakoski*, 139 Idaho at 355, 79 P.3d at 714. In this instance, the district court dismissed Karst's case pursuant to Idaho Criminal Rule 48(a). The very next day, Karst filed her motion to reimburse. This was within the forty-two-day period in which a decision on a motion to dismiss can be appealed. I.A.R. 14(a). Therefore, the district court retained subject matter jurisdiction to consider Karst's motion.

The district court concluded that it was bound by *Peterson* and therefore did not have jurisdiction to consider Karst's motion. This Court had vacated Peterson's judgment of conviction for felony possession of a controlled substance. *See Peterson*, 153 Idaho at 159, 280 P.3d at 186. On remand, Peterson's conviction was dismissed. *Id*. More than ten months after the order to dismiss was entered, Peterson filed a motion for reimbursement for the $520 he paid in financial penalties and restitution. *Id*. at 160, 280 P.3d at 187.

In *Peterson*, the State argued that the district court did not have subject matter jurisdiction to consider Peterson's motion because the order to dismiss was final. *Id*. Peterson argued that various rules and caselaw had extended the district court's jurisdiction:

> *The state argues that, pursuant to the holding in* Jakoski, *the district court lacked subject matter jurisdiction to consider Peterson's motion because the motion was filed over ten months after the district court issued a final order dismissing Peterson's case*. The state further asserts that no rule extended the district court's jurisdiction. *The [S]tate, therefore, characterizes the motion as one seeking an amendment to the district court's order dismissing Peterson's case to include an order for reimbursement. We conclude that this is an appropriate characterization of Peterson's motion*. In reply to the [S]tate's argument, Peterson asserts that the district court's jurisdiction to hear his motion was extended by various rules and related case law.

*Id.* (emphasis added). The Idaho Court of Appeals concluded that no rule or case extended the district court's jurisdiction to consider Peterson's motion, and therefore held that the district court lacked subject matter jurisdiction to consider the motion. *Id*. at 165, 280 P.3d at 192. Here, the district court's order to dismiss was not yet final when Karst filed her motion to reimburse within the forty-two-day appeal period, so *Peterson* is not applicable.

The State also argues that *Peterson* is applicable because the Court of Appeals held that a motion to reimburse is civil in nature and therefore cannot be filed in a criminal case. *Id*. at 163, 280 P.3d at 190. However, a careful reading of *Peterson* shows that it did not actually hold that a motion to reimburse cannot be filed in a criminal case. Rather, as previously discussed, *Peterson*

held that the defendant's motion was untimely and therefore the district court's subject matter jurisdiction had expired. *See id.* at 161–63, 167, 280 P.3d at 188–90, 194. Because Peterson's motion was untimely, the court noted that his remedy at that point was to file civil claims against the various governmental entities who received his monies to recover the amounts paid. *Id.* Additionally, the "civil in nature" language in *Peterson* was used in relation to that portion of Peterson's motion seeking reimbursement for restitution paid, which the court described as "civil in nature." *Id.* at 163, 280 P.3d at 190. We therefore reject the State's argument that *Peterson* held that a motion for reimbursement cannot be filed in the underlying criminal case.

The State also cites to *Jakoski* for the proposition that: "[i]t would be too much of a stretch to hold that a motion filed in a criminal case can be considered as a pleading commencing civil litigation" to argue that a motion to reimburse is civil in nature. However, this statement was in the context of filing an application for post-conviction relief, which is civil in nature and a separate legal action that is distinct from a defendant's underlying criminal case. *Jakoski*, 139 Idaho at 355–56, 79 P.3d at 714–15. Therefore, *Jakoski* is not applicable.

Karst filed her motion to reimburse within forty-two days of the district court's order dismissing the case against her. Therefore, the district court had subject matter jurisdiction to consider the motion.

*2. The district court has personal jurisdiction to consider Karst's motion.*

Karst argues that the district court had personal jurisdiction to grant her motion to reimburse because the State submitted to the district court's personal jurisdiction by filing a criminal complaint against Karst. The State does not directly address this argument, but instead contends that Karst's argument is faulty because "the district court must have personal jurisdiction over some person or entity that the court can 'hold accountable' for the reimbursement of her payments, and enter an order against, to remedy the problem."

"Personal jurisdiction refers to the court's authority to adjudicate the claim as to the person." *Rogers*, 140 Idaho at 227–28, 91 P.3d at 1131–32 (quoting 20 Am. Jur. 2d *Courts* § 70 (1995)). "That a court has 'jurisdiction of a party' means either that a party has appeared generally and submitted to the jurisdiction, has otherwise waived service of process, or that process has properly issued and been served on such party." *Id*. (quoting 20 Am. Jur. 2d *Courts* § 70). "There must be personal jurisdiction over a party before a court may enter an order against it, whether in a civil or criminal case[.]" *Hooper v. State*, 150 Idaho 497, 500, 248 P.3d 748, 751 (2011).

6

We hold that the district court has personal jurisdiction to consider Karst's motion because the State appeared generally and submitted to the district court's jurisdiction when it filed criminal charges against Karst. In criminal actions, the State appears generally and submits to the personal jurisdiction of the district court when it files a complaint or indictment charging a defendant with a crime. *See* Idaho Const. art. V, § 1 ("[E]very action prosecuted by the people of the state as a party, against a person charged with a public offense, for the punishment of the same, shall be termed a criminal action."); I.C. § 19-104 ("A criminal action is prosecuted in the name of the state of Idaho, as a party, against the person charged with the offense."); *City of Sandpoint v. Butigan*, 91 Idaho 855, 856, 433 P.2d 125, 126 (1967) ("[A] criminal proceeding for the prosecution of one charged with a public offense against the laws of the state must be prosecuted in the name of the state."); *Bach v. Miller*, 144 Idaho 142, 145, 158 P.3d 305, 308 (2007) (holding that the plaintiff consented to the personal jurisdiction of the district court by filing a complaint). Because the State initiated the legal action, the State has consented to the district court's personal jurisdiction. *See D.L. Evans Bank v. Dean*, 173 Idaho 20, ___, 538 P.3d 793, 798 (2023) ("[T]he voluntary appearance of a party . . . constitutes a voluntary submission to the personal jurisdiction of the court."); *Whitney v. Randall*, 58 Idaho 49, 56, 70 P.2d 384, 387 (1937) (finding that the district court had personal jurisdiction over the parties where they voluntarily appeared in open court).

The State argues that *Peterson* and this Court's decision in *Hooper v. State*, 150 Idaho 497, 248 P.3d 748, hold that the district court lacks personal jurisdiction over the State in a criminal action to order the return of fees paid by a defendant whose conviction has been overturned. We conclude *Peterson* and *Hooper* are distinguishable because they concerned whether a defendant could assert personal jurisdiction over a nonparty to the criminal case.

*Peterson* explicitly relied on *Hooper* to come to its conclusion that a district court lacks personal jurisdiction over the Idaho Industrial Commission in a criminal action for purposes of ordering the return of restitution paid. Accordingly, we examine *Hooper* first. In *Hooper*, the defendant was ordered to pay restitution to the Idaho Industrial Commission's crime victims compensation account as part of his criminal sentence. *Hooper*, 150 Idaho at 498, 248 P.3d at 749. Hooper's conviction was overturned, and he sought reimbursement of the $292.87 in restitution he had paid to the district court clerk, which was then disbursed to the victim's compensation account. *Id*. The State argued that because the Industrial Commission was not a party to the

criminal prosecution, the district court was powerless to order a refund of the restitution payments. *Id*. at 499, 248 P.3d at 750.

This Court agreed, holding that the district court lacked personal jurisdiction over the Industrial Commission because the Commission had never been served or submitted to the district court's jurisdiction in the criminal case, and therefore the district court could not order the refund of Hooper's restitution payments:

> [T]he Industrial Commission received Hooper's restitution payments via the district court clerk. *Thus, for the court to order the Industrial Commission to return Hooper's restitution payments, the Commission must have been served properly with a summons and complaint or submitted to the court's jurisdiction.* There is nothing in the record, however, to suggest that the Commission ever received notice or appeared generally in this criminal proceeding to resist Hooper's motion to refund his restitution payments. The district court therefore was correct when it ruled that it had no jurisdiction to order the Commission to return the restitution payments.

*Id*. at 500, 248 P.3d at 751.

*Peterson* relied on *Hooper* in concluding that the district court did not have personal jurisdiction to order the return of Peterson's funds. *Peterson*, 153 Idaho at 165, 280 P.3d at 192. Peterson argued that the district court had personal jurisdiction over the district court clerk, who retained most of the funds paid by Peterson, and therefore the district court could order the return of the funds. *Id*. Peterson additionally argued that the district court had personal jurisdiction to order the return of any restitution funds that were paid to the prosecutor and dispersed to various governmental entities. *Id*. at 165–66, 280 P.3d at 192–93. The Idaho Court of Appeals concluded that the district court did not have personal jurisdiction over the district court clerk:

> Even if the district court clerk held the funds Peterson paid, the district court did not have personal jurisdiction over the clerk because the clerk was not a party to this action. Thus, for the district court to order the clerk to return funds Peterson paid to the clerk that were not disbursed, Peterson must have served the clerk properly with a summons and complaint or the clerk must have submitted to the district court's jurisdiction. *See Hooper*, 150 Idaho at 500, 248 P.3d at 751.

*Id*. at 166, 280 P.3d at 193. The Court of Appeals further concluded that, even if the funds had been disbursed to various state agencies, under *Hooper*, the district court lacked personal jurisdiction over those state agencies because they had not been properly served or submitted to the district court's jurisdiction:

> Accordingly, even assuming that any funds paid by Peterson were disbursed by the clerk of the district court, such funds would have been disbursed to the county

treasurer, the Idaho Industrial Commission, the district court fund overseen by the county board of commissioners, or the Idaho State Police. Thus, for the district court to order the return of such payments, Peterson would have to serve those parties properly with a summons and complaint or they would have to submit to the district court's jurisdiction. *See Hooper*, 150 Idaho at 500, 248 P.3d at 751. Absent such service or submission, the district court lacked personal jurisdiction over the necessary parties to order the return of the $520 paid by Peterson in this case.

*Id*. at 167, 280 P.3d at 194.

Both *Hooper* and *Peterson* are distinguishable from the facts of this case. Those decisions are premised on the conclusion that the district court did not have personal jurisdiction over nonparties to the case. *See Hooper*, 150 Idaho at 500, 248 P.3d at 751; *Peterson*, 153 Idaho at 166–67, 280 P.3d at 193–94. However, neither case holds that a district court lacks personal jurisdiction over the State. For the reasons previously discussed, the State initiates criminal proceedings against a defendant and therefore submits to the district court's personal jurisdiction. Karst did not seek reimbursement from a nonparty to the case. Rather, she sought reimbursement from the State—the same party that initiated the case. Therefore, neither *Hooper* nor *Peterson* is applicable here.

We also reject the State's argument that personal jurisdiction does not exist because it is not the proper party for purposes of reimbursement. The concepts of personal jurisdiction and proper party are distinct and separate. *Compare Noh v. Cenarrusa*, 137 Idaho 798, 801, 53 P.3d 1217, 1220 (2002) (discussing whether *a party* is the "proper party" for an adjudication of a specific issue), *with Rogers*, 140 Idaho at 227, 91 P.3d at 1131 (defining personal jurisdiction as "the court's *authority* to adjudicate the claim as to the person" (emphasis added) (citation omitted)). Whether the State is a proper party for purposes of Karst's motion does not affect whether the district court has personal jurisdiction over it. They are two distinct concepts—personal jurisdiction concerns whether the district court has authority to adjudicate Karst's claim against the State, while the proper party issue concerns whether the State is the appropriate party against which to award relief. Put differently, personal jurisdiction concerns whether the court can consider the claim at all, while a proper party issue concerns whether there is legal authority to enter an award against that party. Whether the State is a proper party for purposes of Karst's motion does not change the fact that the State voluntarily submitted to the jurisdiction of the court when it filed a complaint against Karst.

We hold that the district court had subject matter jurisdiction and personal jurisdiction over the State to consider Karst's motion to reimburse. We therefore reverse the district court's order denying Karst's motion and remand for further proceedings.

**B. The State is a proper party for Karst's motion.**

The district court denied Karst's motion on the basis that it lacked jurisdiction. We have addressed that basis and reversed the district court's decision. Although we conclude that the State's proper party argument is not relevant to our personal jurisdiction analysis, we recognize that, on remand, the State may reassert the argument below and we will therefore provide guidance on this issue for purposes of remand. *See State v. Joy*, 155 Idaho 1, 12, 304 P.3d 276, 287 (2013) (stating we may provide guidance on remand on issues that are likely to arise in future proceedings).

The State argues that it is not the proper party for purposes of Karst's motion because it did not receive the funds paid by Karst. Instead, Karst paid the monies to the court clerk, and they were later distributed to various governmental agencies. The State contends that Karst cannot seek reimbursement from it, but must instead civilly sue each individual agency that received Karst's funds.

Preliminarily, we note that at least one state entity—the Idaho State Police—received some of the monies paid by Karst. More importantly, however, the State enacted laws that mandated that Karst pay the amounts she was ordered to pay. The State has enacted a variety of laws requiring the payment of fees by a defendant as a result of a conviction. *E.g.*, I.C. § 31-3201(1) (clerk of the court service fees); I.C. § 31-3201(3) (administrative surcharge); I.C. § 31-3201(4) (handling fee); I.C. § 31-3201(5) (court technology fee); I.C. § 31-3201A(2) (court costs and fees); I.C. § 31-3201B (peace officer standards and training fee); I.C. § 31-3201C (community service fee); I.C. § 31-3201H (emergency surcharge fee); I.C. § 31-3204 (victim notification fund fee); I.C. § 32-1410 (domestic violence court fee); I.C. § 37-2732C(g) (toxicology testing); I.C. § 37-2735A (drug violations hotline fee); I.C. § 72-1025(1) (crime victim's compensation fund fee); I.C. § 72-1105(2) (peace officer and detention officer disability fee). The State also enacted laws directing how the collected fees should be distributed to different governmental entities. *See* I.C. § 31-3201I.

These state laws form the basis for Karst's reimbursement claim. The State has not contested that its laws require Karst to pay the fees following her conviction. Karst sought reimbursement from the State on the basis that its laws deprived her of her property. Because the

10

State occasioned the deprivation of Karst's property through its laws, it is appropriate for Karst to seek reimbursement from the State when her conviction was vacated and charges were not refiled. *Nelson v. Colorado*, 581 U.S. 128, 139 (2017) ("To comport with due process, a State may not impose anything more than minimal procedures on the refund of exactions dependent upon a conviction subsequently invalidated."); *see Commonwealth v. Martinez*, 109 N.E.3d 459, 479 (Mass. 2018) ("It continues to be the responsibility of the courts to order the refund of fines, fees, and court costs where due process so requires. And the source of payment for such refunds continues to be the Commonwealth [State] . . . .").

Karst argues that the U.S. Supreme Court's decision in *Nelson* confirms that the district court may lawfully order the State to refund the fees she paid as a result of her now-invalidated conviction. The State responds that *Nelson* does not show that Karst's due process rights were violated, but instead was limited to striking down a Colorado scheme that made it almost impossible for defendants to receive reimbursement after their convictions were invalidated.

In *Nelson*, the U.S. Supreme Court held that Colorado's statutory scheme to refund payments to exonerated defendants did not comport with due process. 581 U.S. at 130. The Colorado Supreme Court had held that a court must have statutory authority to issue a refund of Nelson's fees, and that Colorado's Compensation for Certain Exonerated Persons statute ("Colorado Exoneration Act") provided the sole mechanism for seeking a refund. *Id.* at 132–33 (citing *People v. Nelson*, 362 P.3d 1070, 1075 (Colo. 2015)). The Colorado Exoneration Act required exonerated defendants to prove by clear and convincing evidence that they were actually innocent. *Id*. at 134. The U.S. Supreme Court held that this scheme violated the due process rights of a defendant whose conviction was invalidated. In addressing Colorado's Exoneration Act, the U.S. Supreme Court discussed the state's responsibility to refund fees to a defendant whose conviction is overturned:

> *When a criminal conviction is invalidated by a reviewing court and no retrial will occur, is the State obliged to refund fees, court costs, and restitution exacted from the defendant upon, and as a consequence of, the conviction? Our answer is yes. Absent conviction of a crime, one is presumed innocent.* Under the Colorado law before us in these cases, however, the State retains conviction-related assessments unless and until the prevailing defendant institutes a discrete civil proceeding and proves her innocence by clear and convincing evidence. This scheme, we hold, offends the Fourteenth Amendment's guarantee of due process.

*Id*. at 130 (emphasis added). Importantly, the U.S. Supreme Court concluded that "[t]he sole legal basis for these [fees] was the fact of Nelson's . . . convictions" and "[a]bsent those convictions,

Colorado would have no legal right to exact and retain [her] funds." *Id*. at 130–31 (footnote omitted).

While we agree with the State that the holding of *Nelson* is limited to addressing Colorado's statutory scheme, the due process principles articulated by the U.S. Supreme Court apply with equal force to Karst's claim here. Specifically, the Supreme Court noted that states "may not impose anything more than minimal procedures on the refund of exactions dependent upon a conviction subsequently invalidated." *Id*. at 139.

Here, Idaho has no statutory procedure in place for defendants to obtain the return of the fees paid after their convictions have been invalidated. The State contends that Karst's remedy is to file a civil claim against each governmental entity that received her funds. The State argues that this does not violate due process because it has not "imposed" any procedures, much less "more than minimal procedures" for Karst to obtain the return of the fees she paid.

We disagree and the facts of this case disprove the State's contention. The State's laws required Karst to pay the fees upon her conviction. The State's laws caused the monies that she paid to be distributed to a variety of governmental entities. Yet while the State has created no process for her to recover the amounts paid, the State contends it bears no responsibility for repaying those amounts, argues that Karst cannot seek reimbursement in her criminal case, and asserts that Karst must commence myriad of civil suits to recover her money. It is precisely the State that is arguing for the imposition of procedures whereby Karst must file multiple civil suits to recover $569.50.

Further, we conclude that requiring Karst to file multiple civil suits to recover the fees she paid is "more than minimal procedures." Karst is likely to have a difficult time finding a lawyer to file the multiple lawsuits on her behalf because the amount in controversy in each case would be minimal. Karst is not a lawyer by training. While she could seek recovery in small claims court, prosecuting multiple small claims lawsuits on her own would be difficult and time-consuming. The State asserts that the civil suits would likely not go anywhere because the governmental entities would just give up when served with a complaint and summons. However, the State's own actions in this case suggest the governmental entities may defend the cases and force Karst to litigate. Moreover, the filing fees related to the multiple civil actions against each agency that received Karst's funds would potentially exceed the $569.50 Karst seeks to recoup. *See, e.g.*, *Nelson*, 581 U.S. at 137 ("[W]hen amounts a defendant seeks to recoup are not large, . . . the cost

12

of mounting a claim under the Exoneration Act and retaining a lawyer to pursue it would be prohibitive."); *see* I.C. § 31-3201I (listing twenty-six different fees that may have to be paid to various agencies as a result of a conviction, ranging from $1 to $300).

For these reasons, we conclude that the procedure advocated by the State—filing civil suits against every governmental entity that received Karst's funds—amounts to more than minimal procedures and thus violates Karst's due process rights. Because state laws occasioned the deprivation of Karst's property by requiring that she pay certain fees upon her conviction, it is appropriate to require the State to reimburse Karst for those fees in the event she establishes that she paid the fees and that her conviction has been invalidated and that charges either are not refiled or she is acquitted in a subsequent trial. We note that nothing in this decision prevents the State from enacting laws that provide a process for defendants to obtain the return of fees paid following the invalidation of their conviction, provided that the process adopted does not impose more than minimal procedures on them.

Karst has the burden, on remand, to prove by a preponderance of the evidence that she paid $569.50 in fees because of her now-invalidated conviction, that the dismissal of her conviction is final, and that she has not been recharged or that she was acquitted in a subsequent trial. Once Karst has made that showing, the burden shifts to the State to produce evidence to rebut Karst's claimed reimbursement. If Karst meets this initial burden, and the State fails to rebut it, then Karst is entitled to have her funds reimbursed to remedy the State's due process violation.

We note that our decision today is limited to the recovery of statutory fees imposed on defendants exclusively as a result of a now-invalidated criminal conviction, following which charges were not refiled or the defendant was acquitted in a subsequent trial. Our decision today does not address whether a criminal defendant may recover restitution paid. Additionally, nothing in this decision should be read to prevent the State from enacting laws or exercising available legal remedies to recover the monies it refunds to a defendant from the governmental entities that received monies.

## IV. CONCLUSION

For the reasons discussed above, we reverse the district court's denial of Karst's motion for reimbursement and remand for further proceedings consistent with this decision.

Chief Justice BEVAN, and Justices BRODY, MOELLER, and MEYER CONCUR.